*Kib,epate,ick C. J.
This is a writ of error founded upon a bill of exceptions taken at the trial of the cause in Essex Pleas. Many reasons have been assigned for the reversal of the judgment, and much learning has been displayed in the argument of them. The action was brought for a quantity of printing paper sold and delivered, and the only real question arises upon a certain letter offered in evidence on the said trial, and in the said bill of exceptions particularly referred to. This letter is in these words: viz. (See state of case.)
It was admitted that six of the twelve reams, therein particularly ordered, and also the ream of foolscap, were delivered to Russel Canfield within the time prescribed, and that they were therefore justly charged to the defendant, but as to the residue so delivered and charged, the defendant alleged that he was not liable on the said letter, and therefore called upon the court to charge the jury to that effect. The court, however, refused so to charge, and on the contrary charged and gave it as their opinion, “That if the jury, from the whole evidence in the cause, believe that the credit was given original^ to the defendant by the plaintiff, they ought to find for the plaintiff for the whole amount of the paper delivered; that the said letter justified the plaintiff in charging to the defendant the paper delivered to Canfield on the faith and credit of said letter; that if they believed, from the testimony, the paper in question was so delivered, they ought to find for the plaintiff the whole amount; but on *290 the contrary, that if they believed the paper in question was delivered to Canfield on any contract between him and the plaintiff, and on the sole credit of Canfield, then they should find only for the seven reams admitted to be justly charged.”
Upon the most careful consideration which I have been able to give to this letter, when collated with the testimony contained in the bill of exceptions ; I can put no other construction upon it than that which the court below has given ; and therefore I fully concur with them in their charge.
In my opinion, therefore, let the judgment be affirmed.
Rossell J.
The delivery of a part of the paper sold to Smith Scudder, in connexion with his letter to the defendant in error, constituted a sufficient ground on which to charge him with what was afterwards delivered, as appears on his credit, to Canfield. *The charge of the court was therefore correct, in my opinion. As to the objection that some of the counts in the plaintiff’s declaration were bad and that the jury found a general verdict, it is a case specially provided for in our statute. The plaintiff in error cannot prevail.
Southard J.
Several of the questions which were discussed at the bar, seem unimportant in a decision of this cause.’ It will be proper, only to notice them, in passing on to that upon which the rights of the parties rest.
1. I perceive no difficulty in the form of the declaration. Its tedious and technical length is its only fault. It has more counts than are necessary, and displays the accuracy of special pleading rather than a. cautious desire to save costs. I consider it correctly drawn, whether the undertaking of the defendant shall be found to be collateral or original; a promise under the statute of frauds or not.
2. The correctness of the court in refusing to charge as requested, depends upon the question whether the charge given was legal or proper ? If it was legal and proper, the refusal was necessarily right.
3. The execution of the notes by Canfield, can have no effect. It could not suspend the action, or right of action, *291 by Wade against Scudder. Wade could not use these notes. They were made payable to Scudder or order; Scudder never received or endorsed them ; he refused all acknowledgment of and connexion with them. As to him, they were blank paper in Wade’s hands.
4. It is law, “ that any damage or possibility of a loss occasioned to the plaintiff by the promise of another, is a sufficient consideration for such promise, and will make it binding although no actual benefit accrues to the party undertaking.” 1 Sawn. 211. 3 Bur. 1673. 2 Saun. 136. Whether therefore, this be a case within the statute of frauds or not, I have no difficulty as to the consideration of the promise. In either aspect the facts will be found to furnish a sufficient legal foundation to sustain the assumpsit.
5. The only question which demands serious attention, is the strict, legal propriety of the charge, as applied to the facts : and although this charge is not exactly in the shape in which it might *most advantageously have been put, yet I think it plainly subject to a better construction than the plaintiff in error has given it. The first clause is in terms, precise and specific; the last is perhaps, faulty in refering to the letter without expressly connecting the other evidence with it. But the amount of the whole, plainly is, ‘If the jury believe, from the letter in connexion with the other evidence, that the credit was originally given to Scudder, that the paper was sent to Canfield at his request and on his responsibility, they ought to find against him for the full amount: but if they believe that it was delivered in virtue of a contract with Canfield, and on his responsibility aiid credit, there ought to be a verdict for the defendant.’ If this be the charge, it affords no cause of complaint to the defendant. If Scudder ordered goods to be delivered to Canfield, he is answerable for their value, in the common form for goods sold. And if this be the fair import of the evidence, the case has nothing to do with the statute of frauds. That statute, Pat. 136, requires the note or memorandum in writing, only where the defendant is to be charged with the debt, default or miscarriage of another. No such note is at all necessary where the plaintiff parts with *292 his goods, upon the credit and undertaking of the deto pay ; no matter to whom they are delivered. The decisive question is, to whom was the credit given ? Who was immediately responsible? If the credit was given to the defendant, the statute is out of the question. 3 Bur. 1886. Upon this point the court put it to the jury, and I think, put it rightly. Of that fact the jury is clearly and unquestionably the judge. Bul. N. P. 281. 1 Saun. 211. If any error is to be found in the charge, it is in not leaving it altogether to the jury, .hut in expressing an opinion upon it, which may have influenced their decision. But even if this were improper, it does not call for a reversal of the judgment, unless, upon the whole case, this opinion and the consequent verdict of the jury was erroneous. I do not perceive that there was manifest error in, either. The jury; no doubt, as they had a right to do, disbelieved Canfield; and without his .testimony the facts are strong, nay, conclusive to shew that the credit was given solely and exclusively to Seudder. Canfield had wished to procure from Wade, paper on which to print the Essex Patriot. Wade refused to trust him, or let him have the paper. Seudder then applied to Wade— what passed at this interview, we can only in*fer from subsequent facts. Seudder took away with him one ream of paper fit for the Journal; and upon arriving in Elizabeth-Town, wrote the letter which has been so much discussed. In it, he declares,that the ream which he took, was of the right kind, and directs twelve reams more to be sent in a given time, and charged to him. Now all this seems plainly to lead only to one conclusion. Why did not Canfield take the paper ? Because the plaintiff would not trust him. Why did defendant take it and order more, and the whole to be charged to him ? Because his credit had been interposed. But the letter proceeds to say that less than twelve reams would do, if he had not so much of the kind by him, and adds, “we shall take our whole supply of you, and make payment in four months.” It is to be remembered that it is for this “whole supply,” which he thus declares that they will take, that. this suit is brought. But why did he give all these directions—why assume the authority to decide as to the *293 amount of paper then necessary, and what should be taken of him in future? Because his responsibility was-pledged. If he were merely collateral security for Can-field, and Canfield bought the paper and was the person most interested, why did not he give the directions?Why do we see and hear nothing of the principal, while the security does every thing ? But there are also other parts from which the inference is not weak. The plaintiff’s books are kept in the ordinary mercantile mode, charging the paper not to Canfield, but to Scudder, and Scudder is applied to for payment. There are many cases in the books where the goods are charged to the person who receives them, and where there has been an effort to fix the payment on another, because he had promised “to see them paid for,” or something of that kind; but this is of a totally different character. Upon the plaintiff’s books the credit is given to the defendant. The case of Hale, which is incorporated in this action and is made a proper subject of consideration, also affords an additional inference. He too, had tried to get paper of Wade, and had been refused. Scudder also, here interposed his credit, and the paper was sent, and is charged in precisely the same mode, and is paid for by Hah, not to Wade, but to Scudder. The only distinction that I see in the cases is, that Canfield had failed and could not pay ; but Hale had paid.
*The whole of these facts combined, shew so strong a case of credit given to defendant, that I am not willing to find fault with a charge, which expresses a belief that he is bound ; or with a verdict which fastens the responsibility upon him. To me, it seems, that the undertaking was an original, independent promise, which created, induced and secured that credit, upon which, and upon which alone, the plaintiff relied and parted with his property. I do not think, that there is even plausibility in the objection which was so zealously urged, that Can-field was originally liable and might have been sued, and therefore the undertaking of the defendant was collateral. The position is true in law, but unsupported in fact. Where is the evidence that Canfield -was liable ? The mere receipt of the paper, except it be for himself, on his own *294 bargain and credit, does not make him so; and surely plaintiff had no possible means of establishing any such bargain or credit: his own refusal; the letter of Scudder; his own books, conclusively proved that he never trusted Canfield.
Note.—At the May term, 1819, of the Court of Appeals, this judgment was reversed, but the reporter is not able to present the view taken of the case in that court.
In the view then which I take of this case, it is not within the statute of frauds; no note in writing was at all necessary. The plaintiff might have sustained his claim, upon the facts proved, with parol evidence of the same matters which are contained in the letter.
It is not necessary for me to inquire whether, under the statute, that letter would have been sufficient to charge Scudder; I will only say, that combined with the facts in evidence, I think it an abundant letter of credit; a sufficient note, both of the promise and consideration, to bind the writer to the full extent claimed by the plaintiff.
I am clearly opposed to the reversal of this judgment.
By the whole Court. Let the judgment of the Court of Common Pleas be affirmed.